Coca-Cola Bottling Company of New York, Inc., Respondent, *v.* John Vanneck et al., Appellants.

First Department, July 1, 1952.

PECK, P. J. The question in this case is the proper division of a condemnation award, pursuant to a contract of lease by which defendants, as landlord, agreed to erect a building for plaintiff, as tenant, in accordance with plaintiff's specifications for its bottling and distributing business. The specifications were incorporated in the lease and it was provided that the cost of the construction was to be paid by defendants and repaid by plaintiff in installments over a twenty-year period. The lease provided that in the event of condemnation the tenant shall be entitled to that proportion of the award " which the amount theretofore paid by the tenant to the landlord on account of the cost of the construction of said building bears to the total cost of said building ".

Following the execution of the lease, but prior to the erection of the building, plaintiff decided that it wished to incorporate in the building certain extras, which were not contained in the contract specifications and costs to be defrayed by defendants. The parties made a separate agreement in respect to such extras, providing that if by reason of any changes or extras requested by the tenant the cost of construction is increased, the tenant would pay the increased cost directly to the contractor.

The cost of the specified construction, assumed by the defendants, was $145,907.21, on account of which plaintiff made repay-

ment in installments, prior to the condemnation, of $55,323.41. Extras requested and paid for by plaintiff amounted to $64,149.83. The difficulty as to the division of the condemnation award arose because the amount of the award was not as great as the total cost of constructing the building including the extras. The building award came to $160,000 as against a total cost of $210,057.04. Plaintiff contended that its share of the award should be the proportion which its total contributions, being $119,473.24, bore to the total cost of $210,057.04, or 56.87%, while defendants contended that the only construction cost which was to be considered in determining the ratios of participation in the award was the original construction cost of $145,907.21, to which plaintiff had contributed by repayment 37.917%. The resulting differences in figures may be summarized as follows: On plaintiff's theory it would receive $90,992 and defendants would receive $69,008, each sustaining a loss of approximately 25% on its investment. On defendants' theory they would receive $99,332.80 and plaintiff would receive $60,667.20, resulting in defendants making a gain on their investment, and plaintiff sustaining more than the full loss because of the condemnation. The trial court agreed with plaintiff's interpretation of the contract provisions for division of the award.

We think that a result more consonant with the equities and contract of the parties can be reached than that urged by either party or reached by the trial court. It is fair to conclude that the parties intended, and that it would be most equitable under the circumstances, to separate the basic construction originally paid for by defendants, in reference to which the parties contracted, from the extras contracted for and paid by plaintiff, and apportion the condemnation award between the two, and then apply the contract formula for the division of the award to the portion of the award attributable to the basic construction. Plaintiff will receive any balance attributable to the extras. That seems right because it quite clearly appears that the two items did not contribute to the award in proportion to their relative costs, and that consistently with the nature and purpose of the two expenditures and arrangement of the parties, the defendants should be charged and credited only with the basic cost they paid and the plaintiff should bear the burden and derive the benefit of the extra cost which it incurred for its more particular purposes.

This approach might suggest ordering a new trial to determine the extent to which the two costs are reflected in the con-

demnation award. Despite the difficulty that a judge, other than the condemnation judge, might have in making such division, it would not seem insuperable, and we would order a new trial if it were necessary to make an adequate determination of the facts. It appears to be sufficiently clear upon the record, however, that the basic construction was entitled to, and should be regarded as having received, acceptance in the condemnation award at full cost, and that the extent to which the award fell short of the total construction cost represented a discount on the contribution of the extras to the value of the building in condemnation. This seems clear from the facts that the building was still relatively new when the condemnation took place, and reconstruction costs had risen to such an extent that the building as originally planned and encompassed in the basic construction cost would have been valued in condemnation at full cost, while the extras contributed more to the niceties of the building and to the particular use of the plaintiff than they did to the structural value. Therefore, the court in the condemnation proceeding observed: '' While the court in fixing the building values has considered reconstruction costs and recognized the increase in prices, the reconstruction value alone is not the measure of value. It is some evidence of value, and has so been treated. After considering all of the evidence, the court has based its finding on the amount which the improvements enhance the value of the land.''

The record before us justifies awarding to each party out of the condemnation award the amount which each contributed to the basic construction cost, and the remainder of the award should go to the plaintiff. Or, to put it otherwise, defendants are entitled to recover the balance of the amount of their investment, $90,583.80, and plaintiff is entitled to the remainder of $69,416.20, each to receive proportionately their share of interest on the award.

The judgment appealed from should be modified accordingly. Settle order.

CALLAHAN, J. (concurring). While I agree with the views expressed in the opinion of the Presiding Justice and in the conclusion he arrives at, I think it might be well to add what I consider additional grounds supporting the determination made.

The meaning of the twenty-sixth clause in the lease and the basic intention of the parties concerning the apportionment of any condemnation award can, it seems to me, be best ascertained by keeping in mind the chronology of events in relation to the

execution of the lease and the arrangements for the addition to the building. When the lease was executed on June 12, 1936, a building was contemplated which was depicted in plans and specifications attached to the lease. This was the building which eventually cost $145,907.21 to erect. None of the so-called extras or additions costing $64,149.83, which were later asked, contracted and paid for by the tenant, were included in the plans attached to the lease. When the lease was made, however, it might have been contemplated that the tenant would request some additions to the planned building, but the lease did not purport to make any provision with respect to the same. Accordingly, I deem it was improper for the Trial Term to construe the lease " in the light of the letter " of September 2, 1936. That letter was written long after the execution of the lease. It did not purport to make any practical construction of any term of the lease, but had to do with the additions to the building, which had been decided on after the lease was executed.

When the lease referred to the " cost of construction of the building " and " the total cost of said building " in its twenty-sixth clause, it seems to me that it was referring to the cost of the particular building shown on the plans and specifications. It may be noted that said clause mentioned the amount paid by the tenant " to the landlord ", again showing that the parties were referring to a cost represented by the amount the landlord was to advance. The phrase " cost of construction " is used several times in the lease prior to the twenty-sixth clause thereof. In each of such instances, the term referred to the cost of the building as first planned and to be paid for by the landlord.

It might be well to point out that the tenant, when it learned of an impending condemnation, could have prepaid the remaining installments of the landlord's building expenditures, and it then would have received the entire amount of any award made for the building. It would seem that the basic scheme of the parties was to secure the landlord for the return of the moneys it advanced, and that the tenant would own the building and receive any award for it in condemnation after repaying in full the expenditures of the landlord. That this was the intention of the parties is further indicated by a clause found in the earlier provisions of the lease, reading: " the tenant further agrees that its obligation and agreement to repay the amount so advanced by the landlord to erect said building shall survive and continue after the termination of this indenture of lease whether in any manner herein or in any part of this indenture

set forth or in any other manner, and the tenant agrees to make said payments in the manner herein set forth, so that and to the end that the tenant shall, anything to the contrary notwithstanding, repay to the landlord the full amount of money so advanced by the landlord for the erection of said building.''

The bringing of a proceeding in eminent domain was specifically provided as a ground for terminating the lease. The clause above quoted shows that the tenant was to pay the landlord the moneys which the latter had advanced for construction of the building upon termination of the lease for any cause. The twenty-sixth clause of the lease providing for apportionment of a condemnation award should be construed in the light of the above requirement. The decision of the Trial Term defeats the intent of the parties to secure the return to the landlord of its investment in any event.

When the parties used the phraseology found in the twenty-sixth clause for apportionment of an award, they were trying to cover a contingency of condemnation occurring during the twenty-year period of installment payments for the building. They selected language which showed an intention to divide any such award in the same proportion that the sums paid on account bore to the sum which the landlord had advanced. Of course, an award might be smaller, equal to or larger than the actual cost of construction advanced by the landlord. It would only be in the event of an award less than the landlord's investment that the landlord could suffer any deficit, and then the question would arise as to whether the tenant under other provisions of the lease had to make that deficit good. If the award for the building equaled or exceeded the landlord's investment, the latter would be made whole. True, the clause provided that the landlord was to share in any excess of the award over the cost to it in the proportion indicated. This was no doubt in recognition of the fact that the building would not be entirely paid for at such time. But at the time this provision was written, the factor of an investment by the tenant in the building had not entered the picture nor had it been provided for. By reason of such an investment by the tenant later the need arose of equitably providing for some compensation to the tenant in a contingency not covered by the contract. We find that when this is done to the extent left possible by the contract requirements, there remains no excess in which the landlord can share in accordance with the formula provided. The judgment, in providing that after the landlord has been repaid its investment,

the balance shall go to the tenant as partial compensation for its investment, carries out the basic scheme of the parties and accords with the equities in the situation.

I only wish to add that the Trial Term further erred, it seems to me, when it said that the landlord requested and presumably obtained an award based on the total cost of construction, including payments made by plaintiff directly to the contractor. While it is true that in the condemnation proceedings defendants' witnesses testified to the total expenses of construction by both plaintiff and defendants as evidence of the building value, defendants recognized that under the law the award for the building will be measured by the amount in which said building enhanced the value of the land. This was a commercial property, presumably having a market value and '' just compensation '' would be the sum by which said building enhanced the market value of the land. Defendants' experts recognized this and testified to a building value of $170,000, although the total cost of construction was about $210,000. It, therefore, was not entirely accurate to say that defendants obtained an award for the building based on the sums invested by plaintiff, nor would any equities arise in favor of plaintiff because of the nature of the claims made to the condemnation court as to the cost of construction.

DORE, J., concurs with PECK, P. J.; CALLAHAN, J., concurs in opinion; COHN, J., dissents and votes to affirm on the opinion of BENVENGA, J., at Trial Term. (203 Misc. 216.)

Judgment modified in accordance with the opinion herein. Settle order on notice.